**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **MICHAEL J. BRUYETTE,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| v. | )   **Civil Action No. 13-cv-12727** ) ) |
| **DEVAL PATRICK, et al.,** | ) ) |
| **Defendants.** | ) ) ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                          **September 16, 2015**

## I.      Introduction

Plaintiff Michael J. Bruyette ("Bruyette") has filed this lawsuit against former Governor Deval Patrick ("Patrick"); Terrence Kennedy ("Kennedy") and Christopher Iannella ("Iannella"), members of the Governor's Counsel; and Joshua Wall ("Wall"), former Chairman of the Massachusetts Parole Board.  D. 1, 1-1.  Bruyette alleges violations of his due process rights in the course of the revocation of his parole.  D. 1 ¶¶ 1-2.  He further alleges violations of the Massachusetts Declaration of Rights and state law tort claims.  Id.  The Court previously dismissed the claims against Patrick, Kennedy and Iannella.  D. 8.  Wall has now moved to dismiss.  D. 34.  Bruyette has moved for leave to amend his complaint.  D. 48.  For the reasons set forth below, the Court ALLOWS Wall's motion to dismiss and DENIES Bruyette's motion to amend.

1

## II.      Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).  A complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  However, "[i]n determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal citations omitted).

The Court notes that "the fact that [Bruyette] filed the complaint *pro se* militates in favor of a liberal reading" of his allegations, and that "our task is not to decide whether [Bruyette] ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim[s]." Rodi v. Southern New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004); see Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

**III.    Factual Background**

The following allegations are drawn from Bruyette's complaint and are accepted as true for the purposes of the pending motion to dismiss.

In July 1986, Bruyette pleaded guilty to second degree murder and conspiracy to commit murder.  D. 1 ¶ 10.  He received a sentence of life in prison on the murder charge and a consecutive sentence of seven to ten years on the conspiracy count.  Id.  Bruyette was granted parole in October 2009.  Id. ¶ 13.  He then moved to Florida pursuant to the Interstate Compact for the Supervision of Adult Offenders, which regulates the transfer and supervision of parolees among the states.  Id.

In May 2011, the father of Bruyette's live-in girlfriend, Holly Elmore ("Elmore"), arrived at their house carrying a handgun.  Id. ¶ 31.  Bruyette, realizing that the presence of the gun violated his parole, insisted that Elmore's father remove the gun.  Id.  An argument regarding the gun ensued between Bruyette and Elmore, during the course of which Bruyette hit a wall, causing a lighting fixture to fall off the wall and its glass to shatter.  Id. ¶ 32.  Elmore's father then dialed 911.  Id. ¶ 33.

Elmore told the police that the ricocheting glass from the lighting fixture struck her in the face and that Bruyette had threatened to kill her.  Id. ¶ 36.  Bruyette was charged with domestic assault and domestic battery.  Id. ¶ 39.  Bruyette was acquitted of both charges.  Id. ¶ 47.  Elmore perjured herself during the trial, and Bruyette was offered the opportunity to press charges, which he declined.  Id.

While awaiting trial, Bruyette requested that he be afforded a probable cause hearing in Florida regarding the revocation of his parole prior to extradition to Massachusetts.  Id. ¶ 46. Instead, Massachusetts authorities transferred Bruyette to Massachusetts before the hearing

occurred in Florida and conducted a preliminary revocation hearing in Massachusetts.  D. 1-1 ¶¶

79, 81, 84-85.

In March 2012, Bruyette's parole was revoked based on irresponsible conduct,

association with a person with a criminal record and violation of a special condition of parole,

namely, abstaining from drinking alcohol.  Id. ¶ 86; D. 30-8.  No probable cause was found for a

parole violation based upon violation of the law because Bruyette was adjudged not guilty on the

Florida domestic violence charges.  D. 1-1 ¶ 86; D. 30-8.  The Parole Board affirmed the

revocation in a written decision dated May 13, 2014.  D. 30-15.

## IV.    Procedural History

Bruyette filed the instant complaint on October 2, 2013.  D. 1; D. 1-1.  All claims were

dismissed against Patrick, Kennedy and Iannella pursuant to the PLRA.  D. 8.  The remaining

claims against Wall, under 42 U.S.C. § 1983, are for violation of Bruyette's First, Sixth, Eighth

and Fourteenth Amendment rights.  D. 1-1 at 11-21.  In terms of relief, Bruyette seeks an

injunction against further violation of his rights; declaratory relief; damages; and attorneys' fees.

Id. at 22-23.  On October 16, 2014, Wall moved to dismiss.  D. 34.  On February 27, 2015,

Bruyette moved for an unredacted copy of the parole running report.  D. 41.  Wall's response to

the motion included the parole running report with nearly all redactions removed.  D. 47, 47-1.

Bruyette has not objected to the production of the mostly unredacted report,[1] using it as the basis

for his motion to amend his complaint.  D. 48.  Bruyette's motion to amend rests on Fed. R. Civ.

P. 15(d), Supplemental Pleadings, arguing that the parole report supports his due process claims.

D. 48 at 2.

---

[1]Because Bruyette's request was substantially met by Wall, D. 47, the Court DENIES
Bruyette's motion for an unredacted copy of the parole running report as moot, D. 41.

## V.     Discussion

### A.     Section 1983 Claim is Barred

Bruyette's § 1983 claim violates the Supreme Court's holding in Heck v. Humphrey, 512

U.S. 477, 486-87 (1994):

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

The Court has clarified that "a state prisoner's § 1983 action is barred (absent prior invalidation)

– no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's

conduct (state conduct leading to conviction or internal prison proceedings) – *if* success in that

action would necessarily demonstrate the invalidity of the confinement or its duration."

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).  A claim under § 1983

"contending that a state parole revocation was constitutionally invalid . . . challenges the 'fact or

duration of [the plaintiff's] confinement.'"  White v. Glittens, 121 F.3d 803, 806 (1st Cir. 1997)

(quoting Heck, 512 U.S. at 481) (alteration in original).  Similar to Bruyette, the plaintiff in

White asserted that his parole revocation violated due process because he was not provided with

an attorney.  Id. at 806-07.  The Court concluded that "[a] favorable decision in the § 1983

proceeding would necessarily call into question the validity of the state's decree revoking his

parole and ordering him back to prison."  Id. at 807.  Applying Heck, the Court affirmed

dismissal.  Id.  Here, Bruyette argues that his parole was improperly revoked.  D. 1 ¶ 2.  If he

were to receive a favorable decision on his claim before this Court, he would call into question

the Parole Board's decision to revoke his parole and send him back to prison.  Such an action is

prohibited by Heck and White.

Bruyette argues that he does not seek release, only a probable cause hearing held in

Florida instead of in Massachusetts.  D. 40-1 at 20.  This relief, however, was not explicitly

requested in Bruyette's complaint.  D. 1-1 at 22-23.  Even if it had been, Bruyette would still be

challenging the validity of his confinement as result of his parole revocation.  Before he brings

such a claim, he must allege that the Parole Board's decision has been reversed, declared invalid

or called into question.  Heck, 512 U.S. at 486-87; Littles v. Board of Pardons & Paroles Div., 68

F.3d 122, 123 (5th Cir. 1995) (holding that Heck barred plaintiff's due process claim based on

parole revocation without written statement of reasons); cf. Phillips v. Conrad, No. 10-40085-

FDS, 2011 WL 309677, at * 5 (D. Mass. Feb. 18, 2011) (allowing prisoner's § 1983 claim to

proceed where claims did "not hinge on the assertion that the revocation of his parole was

unconstitutional," but rather plaintiff sought correction of parole file and new hearing based upon

correct information).

The cases cited by Bruyette do not compel a contrary conclusion.  For example, in

Richards v. Bellmon, 941 F.2d 1015 (10th Cir. 1991), the court permitted a state prisoner's §

1983 claim to proceed because the suit challenged the "conditions of confinement" but not the

"fact of conviction."  Id. at 1018.  The plaintiff had challenged the sufficiency of funds provided

to the appellate public defender system, arguing that the lack of funds deprived him of the

services of an appellate public defender, and thereby due process, but the plaintiff did not seek

release.  Id. at 1016, 1018-19.  In other words, the plaintiff sought "only a prompt determination

of his appeal," whereas success of Bruyette's claim would challenge the very fact of his

confinement.  Id. at 1018.

Also inapposite here is <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975), in which prisoners pursued a class action seeking the provision of a probable cause hearing for pretrial detention. <u>Id.</u> at 107 and n.6.  <u>Gerstein</u> is inapplicable because it was not a § 1983 case and Bruyette was not denied a probable cause determination or a final revocation hearing; they merely occurred in Massachusetts rather than in Florida.  D. 30-8.

### B.        Claims for Damages Barred

Wall, acting in his official capacity as Chairman of the Massachusetts Parole Board, is immune from a suit for damages under § 1983.  "It is well settled beyond peradventure . . . that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action."  <u>Destek Group, Inc. v. State of New Hampshire Pub. Utils. Comm'n</u>, 318 F.3d 32, 40 (1st Cir. 2003) (quoting <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991) (alteration in original)).

In addition, Bruyette's claims against Wall as an individual are barred because Wall is protected by absolute immunity.  The determination of whether absolute immunity is available turns on a functional approach to Wall's role.  <u>See</u> <u>Forrester v. White</u>, 484 U.S. 219, 224 (1988). "Absolute immunity is available to 'certain 'quasi-judicial' agency officials who, irrespective of their *title*, perform *functions* essentially similar to those of judges . . . in a setting similar to that of a court."  <u>Destek</u>, 318 F.3d at 41 (internal quotation marks omitted) (alterations and emphasis in original).   The three-part test to determine if immunity attaches asks whether the official in question (1) "perform[s] a traditional adjudicatory function;" (2) "decide[s] cases sufficiently controversial that, in the absence of absolute immunity, [he] would be subject to numerous damages actions;" and (3) "adjudicate[s] disputes against a backdrop of multiple safeguards designed to protect a party's constitutional rights."   <u>Id.</u> (quoting <u>Bettencourt v. Board of</u>

7

Registration In Med. of Com. of Mass., 904 F.2d 772, 783 (1st Cir. 1990) (alterations omitted)).

Applying the three-part test to determine if "quasi-judicial" immunity applies, the Court

concludes that Wall, as a member of the parole board, performed tasks similar to judges, such as

determining facts, applying law and issuing written decisions.  Id.  Second, in the absence of

immunity, Wall would be subject to many lawsuits due to the controversial nature of granting

and revoking parole.  Id.  Finally, the parole revocation process encompasses safeguards to

prevent constitutional missteps, such as multiple hearings.  Id.; see 120 C.M.R. 300.00 *et seq*.

The Court concludes that Wall is entitled to absolute immunity with respect to his role in

revoking parole because of it is a "quasi-judicial" function.  Johnson v. Rhode Island Parole Bd.

Members, 815 F.2d 5, 6 (1st Cir. 1987) (agreeing with district court that "the defendant parole

board members are shielded by absolute immunity in § 1983 actions seeking monetary damages

for actions taken by the members in the performance of their official duties"); see Montero v.

Travis, 171 F.3d 757, 761 (2d Cir. 1999) (stating that "we join our sister circuits and hold

directly that parole board officials, like judges, are entitled to absolute immunity from suit from

damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or

revoke parole").

>          C.      **Injunctive Relief Barred**

Bruyette's claims for injunctive relief are barred by the Federal Courts Improvement Act

of 1996 ("FCIA"), Pub. L. No. 104-317, 110 Stat. 3847, § 309(c).  The FCIA amended § 1983,

providing that "in any action brought against a judicial officer for an act or omission taken in

such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree

was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  The First Circuit has not

addressed whether members of the parole board are "judicial officers" for purposes of the FCIA,

but another court in this district concluded that they are, reasoning that "it would be incongruous to determine that parole board members and officers performing 'quasi-judicial' functions are entitled to absolute immunity from damages but are not 'judicial officers' immune from actions seeking injunctions and attorney's fees under § 1983 and § 1988." Phillips, 2011 WL 309677, at * 8.  This Court agrees, concluding that Bruyette's claims for injunctive relief and attorney's fees must be dismissed.  Brown v. Rhode Island, No. 12-1403, 2013 WL 646489, at * 2 (1st Cir. Feb. 22, 2013) (noting that a "new parole hearing could be sought in a § 1983 action" but "such a request . . . arguably would be barred by the [FCIA]"); Farland v. Wall, No. 14-40023-TSH, 2015 WL 1084544, at * 3 (D. Mass. Mar. 12, 2015) (barring injunctive relief against Wall as Chairman of the Parole Board pursuant to the FCIA).

### D.      Declaratory Relief Barred

Bruyette seeks declarations that Wall, in the course of parole revocation hearings, must abide by the law and that Bruyette's due process rights were violated at his revocation proceeding.  D. 1-1 at 22, 23.  "[D]eclaratory judgment is unavailable where . . . there is no ongoing legal violation."  Mills v. State of Me., 118 F.3d 37, 55 (1st Cir. 1997) (footnote omitted).  "[D]eclaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." Brown, 2013 WL 646489, at * 2 (quoting Ysais v. New Mexico, 373 Fed. Appx. 863, 866 (10th Cir. 2010)).  Bruyette, in essence, seeks a declaration of liability for Wall's past acts, and, therefore, declaratory relief is not available.

### E.      State Law Claims Dismissed

Bruyette's complaint alleges tort claims and violations of the Massachusetts Declaration of Rights.  D. 1 ¶ 1.  The complaint, however, fails to set forth any factual support for these

claims.   "'Naked assertions' devoid of 'further factual enhancement'" do not satisfy the standards set forth in Iqbal and Twombly.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (alterations omitted).   Moreover, the state law claims are barred by the doctrine of sovereign immunity.  Wilborn v. Walsh, 584 F. Supp. 2d 384, 391 (D. Mass. 2008) (stating that "it is well established 'that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment'") (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984)). Accordingly, the state law claims must be dismissed.

### F.      Bruyette's Motion to Supplement or Amend his Complaint is Denied

Relying upon the unredacted parole running report, Bruyette seeks leave to supplement his pleadings in accordance with Fed. R. Civ. P. 15(d).  D. 48 at 1.  That rule allows the Court to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.   The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d).  "A motion to supplement the pleadings under Rule 15(d) is addressed to sound discretion of the Court."  Structural Sys., Inc. v. Sulfaro, 692 F. Supp. 34, 36 (D. Mass. 1988).  Rule 15(d), however, "does not expressly apply to pre-action matters of which a party was ignorant at the time the original pleading was filed (these matters may be raised under Rule 15(a)) but embraces only events that have happened 'after the date of the pleading to be supplemented.'"  6A Wright et al., Federal Practice and Procedure § 1504 (3d ed. 2010) (quoting Fed. R. Civ. P. 15(d)); see Scoggins v. Hall, No. 04-10814-PBS, 2011 WL 3665425, at * 21 n.29 (D. Mass. June 1, 2011) (stating that Rule 15(d) was inapplicable where events forming basis of new claims occurred prior to filing of original complaint).  Here, Bruyette seeks to amend based

on events that occurred prior to the filing of his complaint, so Rule 15(d) does not advance his argument.

Bruyette also cites Rule 15(a), which permits a party to amend his pleading "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Bruyette does not provide a proposed amended complaint, instead urging the Court to compare the redacted and unredacted versions of the parole running report, arguing that such a comparison compels the conclusion that his due process rights were violated.  D. 48 at 2.  "[A] judge may deny leave if amending the pleading would be futile – that is, the pined-for amendment does not plead enough to make out a plausible claim for relief."  HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014).  The Court has concluded that Bruyette's original complaint must be dismissed and any additional factual support for his constitutional claims that may be gleaned from the unredacted parole running report does not cure the legal infirmities in his claims.  The Court, therefore, denies his motion to amend his complaint.

## VI.    Conclusion

The Court ALLOWS Wall's motion to dismiss the complaint, D. 34.  The dismissal is without prejudice to afford Bruyette an opportunity to refile should he succeed in challenging the validity of his parole revocation.  The Court also DENIES Bruyette's motion to amend his complaint, D. 48.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge